**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **CHRISTOPHER ALEXANDER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:15-cv-02158-STA-tmp** |
| ) | |
| **KELLOGG USA, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Christopher Alexander filed this action in the Circuit Court of Fayette County, Tennessee, against his former employer Kellogg USA, Inc., alleging claims of interference and retaliation under 29 U.S.C. § 2615(a)(1)-(2) of the Family and Medical Leave Act ("FMLA") and retaliation under the Tennessee Workers' Compensation Act, Tenn. Code Ann. §§ 50-6-101 et seq. (ECF No. 1-2.)[1] Defendant Kellogg removed the action to this Court. (ECF No. 1.) Defendant has now filed a motion for summary judgment. (ECF No. 21.) Plaintiff has filed a response (ECF No. 26), and Defendant has filed a reply to the response. (ECF No. 27.) For the reasons set forth below, Defendant's motion is **GRANTED**.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] When deciding a motion for summary judgment, the court must review all the evidence and draw

---

[1] On August 4, 2015, this Court consolidated the present action with *Christopher Alexander v. Kellogg USA, Inc.*, Civil Action No. 2:15-cv-02049-STA-cgc. (Order, ECF No. 16, 2:15-cv-02049-STA-cgc.)

[2] Fed. R. Civ. P. 56(c).

all reasonable inferences in favor of the non-movant.[3] In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."[8]

The parties have agreed on the following facts.[9] Kellogg owns and operates a facility in Rossville, Tennessee. Plaintiff was hired by Kellogg as a production operator at the Rossville

---

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251–52.

[8] *Celotex*, 477 U.S. at 322.

[9] (Def's St'ment of Mat. Fcts, ECF No. 22-1; Pl's Resp. to St'ment of Mat. Fcts, ECF No. 26-2.)

facility on August 6, 2006.[10]  Plaintiff remained employed in that role until his terminations on

January 28, 2014.[11]

Kellogg gave Plaintiff and reviewed with him the "Rossville Plant Attendance Policy"

when he was hired by Kellogg.  Employees at the Kellogg Rossville Bakery are expected to

abide by the "Rossville Plant Attendance Policy."  On at least four separate occasions from

August 2006 through January 2013 Kellogg issued Plaintiff a revised attendance policy. The

attendance policy states:

> All employees must call in two (2) hours prior to shift start to report off from
> work. (In conjunction with this revision, the company will be using
> CALLEXPERT, INC (a Call Center) for employees to report their absences.

Kellogg's call-in requirement is designed to allow the scheduler or the employee's supervisor to

rework the schedule based on that day's absences to ensure adequate staffing at each position.

Plaintiff acknowledges Kellogg's expectation that all employees call the CALLEXPERT service

to report an absence, regardless of the reason for such absence.  The attendance policy states:

"Attendance will be measured by 'Points Accumulation.' Discipline will be based on the number

of points an employee accumulates."[12]

The attendance policy allows for "Approved FMLA" and "Worker's Compensation

benefits" as excused absences, but it clearly states that, with such absences, "documentation [is]

required."  The policy also states that "[a]n employee who fails to provide sufficient

documentation of a continued absence from work will not discount the level of discipline up to

---

[10]  Kellogg contends that Plaintiff's principal duty was to be generally responsible for machinery
maintenance while Plaintiff contends that he was responsible for the operation of machinery and
not machinery maintenance.  (*Id.* No. 4.)  This is not a material dispute for the purpose of
deciding this motion.

[11]  (Def's St'ment of Mat. Fcts Nos. 1 – 5, ECF No. 22-1; Pl's Resp. to St'ment of Mat. Fcts,
ECF No. 26-2.)

[12]  (*Id.* Nos. 6 –8, 10 - 13.)

and including termination, which is prescribed for a particular occurrence level, because of his/her absence from work **(i.e. an employee may be issued and progress through the disciplinary steps for attendance even if not at work)**." (emphasis in original).[13]

Kellogg's FMLA program is administered through CIGNA, a third party vendor. Employees requesting FMLA certification must submit all requisite doctors' notes and related documentation to CIGNA. CIGNA then notifies the employee as to whether FMLA is approved, denied, or whether further documentation is required. When questions with CIGNA arise, employees often contact Kellogg's Human Resources Department who "try and help [the employee] get the days approved or certified." Every time an employee is certified for intermittent FMLA leave, CIGNA notifies the employee that, to be approved for any particular absence, the employee must report that absence as intermittent leave within forty-eight hours of the absence. CIGNA provides employees with two options for reporting intermittent leave: by telephone or through the Internet. The process for requesting approval of individual intermittent leave - notifying CIGNA through one of the two approved methods within forty-eight hours of missing work - was the same each time Plaintiff requested FMLA leave throughout his tenure with Kellogg. Plaintiff used both approved reporting methods.[14]

Plaintiff requested and was approved for either continuous or intermittent FMLA on approximately ninety separate occasions during his employment. Between June and September 2009, Plaintiff requested and received intermittent leave on twelve separate occasions.[15]

---

[13] (*Id.* Nos. 16-17.) Plaintiff admits the wording of the policy only. (Pl's Resp. to St'ment of Mat. Fcts,, p. 2 No. 17, ECF No. 26-2.)

[14] (Def's St'ment of Mat. Fcts Nos. 18-23, ECF No. 22-1; Pl's Resp. to St'ment of Mat. Fcts, ECF No. 26-2.)

[15] (*Id.* Nos. 24-25.)

Plaintiff sustained two separate workplace injuries during his employment with Kellogg. In 2010, Plaintiff suffered an injury to one of his toes as a result of a chemical spill. As a consequence, Plaintiff was placed on short-term disability leave for approximately six to eight months and received workers' compensation benefits during the leave. Plaintiff did not suffer any adverse employment action as a result of his leave or for filing a workers' compensation claim about his toe.[16]

In June 2012, Plaintiff slipped on a wet floor and injured his neck. As a result, Plaintiff was once again placed on short-term disability leave for approximately eight months and received workers' compensation benefits for the duration of the leave.[17]

On November 6, 2013, Plaintiff received a letter from CIGNA notifying him that he was certified for intermittent FMLA leave for the period beginning October 24, 2013, until April 24, 2014. The CIGNA letter reminded Plaintiff, "During your leave, you will need to report your intermittent leave time within 48 hours…" The letter also provided the phone number and Internet website which Plaintiff should use to report his leave.[18] On November 20, 2013, only two weeks after the date of the CIGNA letter, Plaintiff took a day of intermittent leave.[19]

CIGNA sent Plaintiff a letter notifying him that the leave request for November 20, 2013, had been denied. Kellogg calculated that this attendance violation placed Plaintiff with 7.5 attendance points, which was sufficient for a final reprimand under the attendance policy, but

---

[16] (*Id.* Nos. 27-30.)

[17] (*Id.* Nos. 32-33.)

[18] Plaintiff contends that the correct phone number was not provided to him. (Pl's Resp. to St'ment of Mat. Fcts, p. 3 No. 36, ECF No. 26-2.)

[19] (Def's St'ment of Mat. Fcts Nos. 35-37, ECF No. 22-1; Pl's Resp. to St'ment of Mat. Fcts, ECF No. 26-2.)

Plaintiff was not issued a final reprimand.[20]

Plaintiff again missed work on December 9, 10, and 11, 2013. Plaintiff called CALLEXPERT for each of those days as required by the attendance policy but failed to call CIGNA within forty-eight hours to report the December 9 and 10 absences. Instead, Plaintiff discussed the matter with Olga Terry in Kellogg's Human Resources Department. On December 16, 2013, Plaintiff received a letter from CIGNA notifying him that his absences of November 20 and December 9, 10, and 11, 2013, were being denied for failure to provide the required notice.[21]

Plaintiff went on leave on December 17, 2013, and remained off work until January 9, 2014. On January 10, 2014, the day after Plaintiff returned from leave, Kellogg issued Plaintiff a Final Reprimand for accumulating 8.5 attendance points due to his December 9, 2013, absence. The Disciplinary & Coaching Action Form issued to Plaintiff noted that, under the attendance policy, a ninety day probation was warranted, but he was issued only a Final Reprimand.[22]

On January 10, 2014, Kellogg issued Plaintiff a ninety day probation notice for accumulating 9.5 attendance points due to his December 10, 2013, absence. The Disciplinary & Coaching Action Form noted that under the attendance policy, a Suspension Pending Discharge Hearing was warranted, but he was only issued a ninety day probation.[23]

---

[20] (*Id.* Nos. 39-42.)

[21] (*Id.* Nos. 43-46.) Plaintiff acknowledges receiving the letter but points out that he notified Olga Terry of his intent to use FMLA for December 9, 10, and 11, and he contends that he called CIGNA but "did not get anyone." (Pl's Resp. to St'ment of Mat. Fcts p. 46, ECF No. 26-2.)

[22] (Def's St'ment of Mat. Fcts Nos. 47-49; ECF No. 22-1; Pl's Resp. to St'ment of Mat. Fcts, ECF No. 26-2.)

[23] (*Id.* Nos. 50-51.) "Stacking" refers to issuing more than one discipline for a concurrent string of infractions, thereby accelerating an employee through the progressive discipline process.

Kellogg also issued a notice of Suspension Pending Discharge Hearing for accumulating 10.5 attendance points due to his December 11, 2013, absence. On January 28, 2014, Kellogg terminated Plaintiff's employment on the ground of excessive unexcused absences under the attendance policy.[24]

Plaintiff, through his Union, grieved the termination as an issue of "stacking" disciplines. The Union progressed the grievance through the third step of the grievance process but did not advance the grievance to arbitration.[25]

Before November 20, 2013, Kellogg took no adverse employment action as a result of Plaintiff's taking FMLA leave. Plaintiff took FMLA leave in excess of ninety times over the course of four and a half years without suffering any adverse action. Plaintiff failed to contact CIGNA within the requisite forty-eight hours for his November 20, December 9, and 10 absences. [26]

On December 16, 2013, Plaintiff properly requested and was approved for intermittent FMLA leave. While out on that leave, Kellogg reached out to Plaintiff to encourage him to file for continuous FMLA leave and short-term disability to ensure that he was adequately covered and received payment while out on leave.[27]

Plaintiff's supervisor at the time of his 2012 workers' compensation claim had no involvement or input into the decision to discharge Plaintiff since the supervisor was no longer

---

[24] (*Id.* Nos. 52-53.)

[25] (*Id.* Nos. 54-55.)

[26] (*Id.* Nos. 60-61, 63.)

[27] (*Id.* Nos. 67-68.)

with Kellogg in January 2014.[28]

In response to Defendant's motion, Plaintiff has submitted the affidavit of Lashonia Williams, chief shop steward at Kellogg's Rossville facility.[29] Ms. Williams assists employees when they have been disciplined and was present at Plaintiff's grievance hearing. Defendant contends that Ms. Williams' affidavit contains inadmissible hearsay and statements lacking personal knowledge and should be disregarded. Specifically, Defendant objects to the following statements by Ms. Williams: (1) "Olga Terry, the HR Generalist, testified that she told Mr. Alexander on December 12 and 13 that she did not have time to help him after he told her that he was having problems with his FMLA and needed help."[30] (2) "Because of my position, I know specifically of employees that are still employed at Kellogg's Rossville Plant that have more points than Alexander had when he was terminated."[31] (3) "In 2013, the plant manager, John Heilman, would hold town hall meetings where he would talk about the large amount of employees who were using FMLA and the need to get the percentages down."[32] (4) "At Kellogg's, the rule is that you can miss 7 days and only get one point with a doctor's excuse."[33] (5) "Christopher Alexander is the only employee I have seen that has remained terminated using the stacking of discipline before and after his termination."[34]

---

[28] (*Id.* No. 68.)

[29] (Williams' Affidavit, ECF No. 26-3.)

[30] (*Id.* para. 6.)

[31] (*Id.* para. 7.)

[32] (*Id.* para. 9.)

[33] (*Id.* para.10,)

[34] (*Id.* para.12.)

Federal Rule of Civil Procedure 56(c)(4) requires an affidavit to be based on personal knowledge:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.[35]

Accordingly, a Rule 56 affidavit must fairly present evidence that will be admissible at trial, and it is the burden of the party submitting the affidavits to demonstrate that the witness has personal knowledge of the statements contained in the affidavit.[36] The Court cannot rely on inadmissible hearsay as a basis for a summary judgment decision.[37]

In the present case, the Court need not decide whether Ms. Williams' statement that Ms. Terry "testified" that she did not have time to help Plaintiff with his FMLA is admissible because Plaintiff admitted in his deposition that Ms. Terry advised Plaintiff that she was "doing payroll" and, thus, could not assist him at that time and that the assistance Ms. Terry provided on January 10, 2014 - bringing Plaintiff to her office so they could both call CIGNA - was typical of the assistance Plaintiff regularly received from Human Resources with regard to his FMLA leave requests.[38] In ruling on Defendant's motion for summary judgment, to the extent that it is relevant, the Court will consider the fact that Ms. Terry did not have time to immediately assist Plaintiff with his FMLA because she was processing payroll. At most, the statement is evidence that Ms. Terry assisted Plaintiff with his FMLA when not involved with something more

---

[35] Fed. R. Civ. P. 56(c)(4)*; see Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584–85 (6th Cir. 1992) (district court properly disregarded affidavit submitted in opposition to summary judgment that was not based on personal knowledge and that did not set forth facts that would be admissible into evidence).

[36] *Long v. Procter & Gamble Mfg. Co.*, 2005 WL 1631033, *1 (W.D. Tenn. July 8, 2005).

[37] *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("Hearsay evidence ... must be disregarded.")

[38] (Plaintiff Dep. pp. 39-40, 93. ECF No. 22-3.)

pressing.

As for Ms. Williams' statement that she knows "specifically of employees that are still employed at Kellogg's Rossville Plant that have more points than Alexander had when he was terminated," the Court will not consider this statement because Plaintiff has not provided a foundation for the statement. In order for inferences and/or opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience and established by specific facts.[39] An affidavit must lay a foundation as to why the affiant is competent to testify to the matters stated therein.[40] Without a proper foundation, the affidavit may be disregarded.[41]

Although Ms. Williams states that she has personal knowledge of this fact because of her position as union steward, she has not explained how her position made her privy to such information nor has she specified how many employees are still employed who have more points than Plaintiff, how many more points those employees have, to what extent those employees were in a similar position to Plaintiff, and the names of any of those employees.

There is also no foundation for Ms. Williams' statement that, at Kellogg, "the rule is that you can miss 7 days and only get one point with a doctor's excuse." The statement contains no information to establish that Ms. Williams' statement is based on personal knowledge or any foundation as to the validity of "the rule." Plaintiff has pointed to nothing in Kellogg's written attendance policy that suggests such a "rule."

In her affidavit, Ms. Williams asserts that, in 2013, the plant manager, John Heilman,

---

[39] *See Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n. 2 (6th Cir. 1996); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Although 'personal knowledge' may include inferences and opinions, those inferences must be substantiated by specific facts").

[40] *Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 647 (N.D. Ohio 2005).

[41] *Id.*

would hold town hall meetings where he would talk about the large amount of employees who were using FMLA and the need to get the percentages down.  Ms. Williams does not state that she was at one of the town hall meetings or that she personally heard Heilman's statements.  Even if she was at the meetings, Plaintiff has not explained how Ms. Williams' recitation of Heilman's statements are not inadmissible hearsay.  Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing[,] and ... [that] a party offers in evidence to prove the truth of the matter asserted in the statement."[42]  "[T]he burden of proving that the statement fits squarely within a hearsay exception' rests with the proponent of the hearsay exception."[43]  Plaintiff has not met that burden, and the Court will not consider the alleged statements made by Heilman at town hall meetings.

Finally, Kellogg objects to the statements made by Ms. Williams about "stacking" disciplinary actions.  As noted by Kellogg, Plaintiff, through his Union, grieved his termination as an issue of "stacking" discipline, but the Union did not advance the grievance to arbitration.[44]  To the extent that Plaintiff complains of stacking in and of itself, that issue was properly a Union/employer issue that was handled through the internal grievance process.  Plaintiff cannot present stacking as a claim in this Court.

To the extent that Plaintiff attempts to provide evidence through Ms. Williams' affidavit that he was subjected to discipline that other employees were not subject to as part of his FMLA retaliation claim, that attempt also fails.  Once again, personal knowledge and a proper foundation are lacking for Ms. Williams' statement.  There is nothing in the affidavit to indicate

---

[42] Fed. R. Evid. 801(c).

[43] *United States v. Arnold*, 486 F.3d 177, 206 (6th Cir. 2007) (quoting *United States v. Kendrick*, 853 F.2d 492, 496 n. 3 (6th Cir. 1988)).

[44] (*Id.* Nos. 54-55.)

that Ms. Williams was privy to the disciplinary records of all or even most of Kellogg's other employees. Additionally, the fact that Ms. Williams was "unaware" of any other employee receiving stacked discipline does not mean that no other employee did not, in fact, receive such discipline.

In summary, in reaching its decision, the Court will disregard the statements discussed above that were made by Ms. Williams that lack personal knowledge and/or a proper foundation. The statement concerning the help or lack thereof provided by Ms. Terry to Plaintiff will be considered in context with Plaintiff's deposition testimony explaining why Ms. Terry was unable to help Plaintiff on the date in question.

Federal Rule for Civil Procedure 56(c)(1) requires that "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record" and Local Rule 56.1(b)(3) of this Court requires that "each disputed fact must be supported by specific citation to the record...supporting the contention that such fact is in dispute." The "non-moving party's failure to respond as required to the moving party's statement of material facts 'shall indicate that the asserted facts are not disputed for purposes of summary judgment.'"[45]

In the present case, Plaintiff cites to Ms. Williams' affidavit to support his own statement of material facts.[46] Because the Court has found the statements in the affidavit that support Plaintiff's "facts" to be inadmissible, the Court will not consider those facts. The Court will also not consider Ms. Williams' statements to support Plaintiff's denial of Defendant's statement of material facts.

---

[45] *Burke v. Regions Bank*, 2013 WL 164260 at *2 (W.D. Tenn. Jan. 15, 2013) (citing L.R. 56.1(d)).

[46] Pl's Resp. to St'ment of Mat. Fcts Nos. 73- 81, ECF No. 26-2.)

Plaintiff has failed to cite to any portion of the record for his denial of the following statements: "Plaintiff notified both the Company and CIGNA on eight of these occasions of his request for intermittent leave in a manner consistent with the contact requirements contained in the attendance policy." [47] "Plaintiff acknowledges that he did not experience any adverse employment action as a result of this [neck] injury, or the corresponding workers' compensation claim and leave, prior to his discharge in January 2014."[48] "This attendance violation [November 20, 2013] placed Plaintiff with 7.5 attendance points, sufficient for a Final Reprimand under the attendance policy."[49] "Plaintiff admits that the Company's notice requirement for intermittent FMLA leave obligates the employee to call CIGNA, not the Company, within 48 hours of the leave in order to substantiate the absence as intermittent FMLA leave."[50] "Plaintiff admits that when he provided proper notification, he was approved for FMLA leave in excess of 90 times since 2009."[51] "Plaintiff admits that on November 6, 2013, he received a letter from CIGNA reminding him of the 48-hour call-in requirement."[52] "Plaintiff admits that on December 16, 2013, days after having received the attendance point infractions

---

[47] (*Id.* No. 26.)

[48] (*Id.* Nos. 30 – 34.)

[49] (*Id.* No. 41.)

[50] (*Id.* No. 56.)

[51] (*Id.* No. 57.)

[52] (*Id.* No. 58.) Although Plaintiff now contends that the phone number stated in the letter "was wrong" (*id.*), he acknowledged in his deposition that the number was correct and that he left a voicemail. (Plaintiff Dep. p. 80, ECF No. 22-3.) A party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony. *See Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony."); *see also Reid v. Sears*, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986).

for the November 20, December 9, 10 and 11, 2013 absences, Plaintiff properly requested, and was once again approved for, intermittent FMLA leave."[53]  "Plaintiff admits that neither the Company nor the Union mentioned Plaintiff's workers' compensation leave or claims, at any time, during Plaintiff's discharge meeting."[54]  Because Plaintiff failed to cite to the record to dispute these statements, they will be accepted as true for the purpose of deciding this motion.

<u>FMLA Claim</u>

The FMLA allows qualifying employees to take up to twelve weeks of unpaid leave so that they may recover from serious medical problems or so that they can attend to family members who may suffer from such problems.[55]  "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."[56]  To thwart attempts by employers to discriminate against employees for taking such leave by retaliating against them, Congress made such actions a violation of the FMLA as follows:

Interference with rights

(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.[57]

---

[53]  (Pl's Resp. to St'ment of Mat. Fcts No. 66, ECF No. 26-2.)

[54]  (*Id.* No. 69.)

[55]  *See Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing 29 U.S.C. § 2615).

[56]  *Wysong v. Dow Chem. Co.,* 503 F.3d 441, 447 (6th Cir. 2007).

[57]  29 U.S.C. § 2615(a).

Thus, the FMLA creates two types of claims: interference claims,[58] in which an employee asserts that his employer denied or otherwise interfered with his rights under the FMLA, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA. In the present case, Plaintiff has brought both interference and retaliation claims.

FMLA Interference

"The issue [under the interference theory] is simply whether the employer provided its employee the entitlements set forth in the FMLA - for example, a twelve week leave or reinstatement after taking a medical leave."[59] To prevail on an interference claim, an employee must prove that: (1) he was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.[60]

Defendant Kellogg does not dispute that Plaintiff has shown the first three elements of a prima facie case. Instead, Kellogg contends that Plaintiff has failed to show the fourth element, i.e., that he gave notice of his gave notice of his intent to take leave.[61] Kellogg argues that

---

[58] The "interference" or "entitlement" theory is derived from the FMLA's creation of substantive rights. *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

[59] *Id.*; *cf. Culpepper v. BlueCross BlueShield of Tenn., Inc.*, 321 Fed. App'x. 491, 496 (6th Cir. 2009) ("[The plaintiff's] FMLA [interference] claim ... must fail. Culpepper received exactly what her doctor ordered—six days of FMLA leave. No additional leave was authorized by the Certification, and Culpepper has not shown that the five [unexcused] absences at issue were taken for one of the reasons enumerated in the FMLA.").

[60] *See Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

[61] Plaintiff admits that, when he provided proper notification, he was approved for FMLA leave in excess of ninety times since 2009. (Plaintiff Dep. p. 83, ECF No. 22-3.)

Plaintiff was not eligible for FMLA protection because he did not follow the established procedures for requesting FMLA leave. Specifically, Kellogg asserts that, even though it is undisputed that Plaintiff was familiar with Kellogg's notice requirement that obligates the employee to call CIGNA within forty-eight hours of intermittent FMLA leave and had been reminded of that procedure in a letter dated November 6, 2013, Plaintiff failed to follow the procedure for leave on November 20, December 9, 10, and 11, 2013.[62]

During his deposition, Plaintiff admitted that he did not call CIGNA as required by Kellogg on November 20, December 9, and December 10.[63] However, he argues that Kellogg was put on notice that he had taken FMLA leave on December 9, 10 and 11, 2013, when he went to Human Resources to talk to Ms. Terry, Kellogg's Human Resources Generalist, on December 12. Plaintiff argues that approaching Ms. Terry about the letter from CIGNA denying his November 20, 2013, absence constituted sufficient notice of intermittent leave. In support of his argument, Plaintiff relies on *Cavin v. Honda of Am. Mfg., Inc.*,[64] for the proposition that "Employers cannot deny FMLA leave on the grounds that an employee failed to comply with internal procedures - as long as 'the employee gives timely verbal or other notice.'"[65]

Although Plaintiff is correct that prior to 2009 the Sixth Circuit did not allow employers to deny FMLA relief for failure to comply with internal notice requirements, a 2009 amendment of 29 C.F.R. § 825.302(d) "explicitly permits employers to condition FMLA-protected leave

---

[62] (*Id.*, pp. 43, 78, 83.)

[63] "Q. On November 20th … you never called CIGNA. A. Correct." (*Id.*, p. 85.) "Q. You did not call CIGNA to report the December 9th within 48 hours; correct? A. No." (*Id.*, p. 89.) "Q. Okay. You did not call CIGNA to report the December 10th within 48 hours; correct? A. No." (*Id.*, p. 90.)

[64] 346 F.3d 713, 723 (6th Cir. 2003).

[65] (Pl's Resp. Memo, p. 8, (quoting *Cavin*) ECF No. 26-1.)

upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances."[66] The amended regulation provides that when "an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."[67] Therefore, "[i]f an employee does not comply with an employer's usual and customary notice and procedural requirements, then the FMLA does not give the employee the right to take leave."[68]

Here, it is undisputed that Plaintiff was aware of the requirements of Kellogg's leave policy but did not follow that policy on November 20, December 9, and December 10, 2013. Nothing in the policy allowed Plaintiff to give notice of taking FMLA leave by talking to Ms. Terry instead of calling CIGNA. Therefore, Plaintiff's claim that Kellogg interfered with his leave on those dates is without merit.

As for his December 11 absence, Plaintiff states that, on December 13, he called CIGNA and left a voicemail.[69] In support of his argument, Plaintiff has pointed to a call log for his

---

[66] *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013). The question before the *Strouder* Court was "whether an employer may impose and enforce its own internal notice requirements, even if those requirements go beyond the bare minimum that would generally be sufficient under the FMLA to constitute proper notice." *Id.* The Court answered in the affirmative based on the amended regulation. "Thus, to the extent *Cavin* held to the contrary, its holding has been effectively abrogated by the subsequent revisions to § 825.302(d)." *Id.* at 614-15.

[67] 29 C.F.R. § 825.302(d).

[68] *Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 300 (6th Cir. 2015). In the present case, Plaintiff has pointed to no evidence demonstrating the type of "unusual circumstances" that would have justified his failure to follow the requirements of Kellogg's attendance policy. To the extent that he had trouble calling CIGNA, he could have used the alternate website method of providing notice. Plaintiff has not explained why he did not provide notice to CIGNA through its website if, as he alleges, he was unable to talk with CIGNA.

[69] (Plaintiff Dep. p. 92, ECF No. 22-3.)

phone plan purportedly demonstrating that he did, in fact, call on that date.[70]   As noted by Kellogg, there is nothing on the call log that identifies the phone plan's number, to whom the number belonged, or any other identifying information.  However, even if the Court were to accept this document as true, Plaintiff testified that he did not actually speak with a CIGNA representative until December 16, 2013[71] and, Plaintiff did not use CIGNA's website to provide notice when he failed to talk to a representative.  Plaintiff further testified that, on January 10, 2014, after he returned from intermittent leave, Plaintiff and Ms. Terry contacted CIGNA, who confirmed that they had no record of Plaintiff calling within the requisite period.[72]

Defendant points out that, even if Plaintiff had called in within the forty-eight hour call-in period for his December 11 absence, he would still have accumulated 9.5 attendance points for other absences, which is half a point more than what the attendance policy requires for termination.   Plaintiff has responded that, even though Kellogg's written policy allowed termination for 9.5 points, he was given only a ninety day probation for accumulating those points.  The fact that Plaintiff did not receive an authorized discipline does not mean that he could not have received that discipline.  Therefore, Plaintiff's argument fails.

Plaintiff has not established a prima facie case of FMLA interference because the undisputed evidence shows that he did not provide proper notice of his intermittent leave for November 20, December 9, 10, and 11, 2013.

---

[70]  (Affidavit, Pl's Resp., p.13, ECF No. 26-4.)

[71]  (Plaintiff Dep. p. 96, ECF No. 22-3.)

[72]  (*Id.* p. 124.)  Although CIGNA may have told Plaintiff to contact Kellogg's HR Department to contest the denial of his leave, there is nothing in the record showing that Plaintiff was told to contact the HR Department, rather than CIGNA, to provide notice when he wanted to take leave. Instead, it is undisputed that the policy required Plaintiff to notify Kellogg through CALLEXPERT and to notify CIGNA by telephone or via CIGNA's website.

Even if Plaintiff was able to establish a prima facie case, his FMLA interference claim still fails. Kellogg had a legitimate, non-discriminatory reason for denying the November 20 and December 9, 10, and 11 absences as FMLA intermittent leave because Plaintiff failed to notify CIGNA of his absences within the requisite forty-eight hours on four occasions.[73] Pursuant to its attendance policy, Kellogg issued Plaintiff attendance points for those days and then disciplined him accordingly.

Once Kellogg articulates a legitimate, nondiscriminatory reason, Plaintiff's claim can survive summary judgment only if he can show that Kellogg's stated reason for the termination was a pretext for unlawful discrimination.[74] To carry his burden, Plaintiff must show that "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."[75] Plaintiff has not offered any admissible evidence that the proffered reason has no basis in fact, did not actually motive the challenged conduct,[76] or was insufficient to warrant the challenged conduct, other than the argument rejected above by the Court that Plaintiff did, in fact, give proper notice. Consequently, Kellogg is entitled to summary judgment on Plaintiff's FMLA interference claim.

FMLA Retaliation

The FMLA makes it "unlawful for any employer to discharge or in any other manner

---

[73] *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (Adopting the burden-shifting framework of *McDonnell Douglas* for FMLA interference claims: once a prima facie case has been established, the burden shifts to the employer to prove it had a legitimate reason for taking the action it did.); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012).

[74] *Donald*, 667 F.3d at 762.

[75] *Ritenour v. Tennessee Dep't of Human Servs.*, 497 Fed. App'x 521, 532 (6th Cir. 2012).

[76] The Court has found that Ms. Wiliams' affidavit testimony about Heilman's purported statements at town hall meetings is inadmissible. Therefore, Plaintiff cannot rely on those statements as evidence of pretext.

discriminate against any individual for opposing any practice made unlawful by this subchapter."[77]  Retaliation claims impose liability on employers who act against employees specifically because those employees invoked their FMLA rights.[78]  However, the FMLA does not prohibit an employer from terminating a person who has exercised rights under the FMLA, provided that the reasons for termination are unrelated to the exercise of such rights.[79]  The issue raised by a retaliation claim is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason."[80]

Plaintiff claims that Ms. Terry's alleged inability to assist him on December 12, 2013, is direct evidence of Defendant's retaliatory behavior.  However, as noted above, Plaintiff testified that Ms. Terry told him that she was processing payroll and, thus, could not assist him at that time. Plaintiff has not refuted Ms. Terry's explanation to him as to why she could not help him at that particular time.  Moreover, Plaintiff testified that the assistance Ms. Terry provided on January 10, 2014, i.e., bringing him to her office so they could both call CIGNA, was typical of the assistance Plaintiff regularly received from Human Resources.[81]

Because Plaintiff has not presented any direct evidence of retaliation, the Court will

---

[77]  29 U.S.C. § 2615(a)(2).

[78]  *See Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 885 (7th Cir. 2005) (observing that the retaliation theory applies when a company seeks to punish an employee "for exercising rights or opposing an unlawful procedure").  *See also Nolen v. FedEx TechConnect, Inc.*, 971 F. Supp. 2d 694, 702 (W.D. Tenn. 2013) (*aff'd* May 28, 2014) ("Under the [FMLA] retaliation theory, the relevant inquiry is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.") .

[79]  *See Joostberns v. United Parcel Services, Inc.*, 166 Fed. App'x 783 *5 - 6 (6th Cir. 2006).

[80]  *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

[81]  (Plaintiff Dep. pp. 39-40. 93, 98, ECF No. 22-3.)

analyze the retaliation claim under the *McDonnell Douglas* burden-shifting framework.[82]  To establish a prima facie case for retaliation, a plaintiff must establish: (1) that he availed himself of a protected right under the FMLA; (2) that he was adversely affected by an employment decision; and (3) that a causal connection exists between the exercise of the protected right and the adverse employment decision.[83]  Indirect evidence is sufficient to support a prima facie case if the evidence is "sufficient to raise the inference that [the] protected activity was the likely reason for the adverse [employment] action."[84]

Plaintiff has not shown the first element of a prima facie case because he has not shown that he availed himself of a protected right.  As discussed above, Plaintiff did not take approved FMLA leave on the dates in question.  Taking unapproved leave was not a "protected right."

Additionally, he has not shown the third element of a prima facie case - causation.  To establish the requisite causal connection, Plaintiff must produce sufficient evidence from which an inference could be drawn that his protected activity was a but-for cause of his termination.[85]

---

[82]  *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) ("An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas*.").

[83]  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

[84]  *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).

[85]  *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see also Nguyen*, 229 F.3d at 563 (to establish a causal connection the plaintiff must establish that the adverse action would not have been taken had the plaintiff not engaged in protected activity); *Ozier v. RTM Enterprises of Georgia, Inc.*, 229 Fed. App'x 371, 377 (6th Cir. 2007) ("Under federal law, in order to show a causal connection between the protected activity and the adverse action—the fourth element of the prima facie case - Ozier must produce sufficient evidence to support an inference that RTM took the adverse employment action because Ozier had complained of discrimination.").  Although these are Title VII retaliation cases, the Sixth Circuit has often relied on Title VII precedent in analyzing FMLA claims.  *See Hoffman v. Prof'l Med Team*, 394 F.3d 414, 422 (6th Cir. 2005) (observing that FMLA retaliation claims use the same analytical framework as Title VII retaliation claims).

It is undisputed that Plaintiff took FMLA leave in excess of ninety times over the course of four and a half years without suffering any adverse action. He never suffered an adverse action when he provided proper notice of his intermittent FMLA leave.

Plaintiff contends that the close temporal proximity between the exercise of his FMLA rights and his termination raises an issue of causation. However, Plaintiff did not exercise protected rights on November 20, or December 9, 10, or 11 because he did not provide proper notice. Moreover, only a few days later, on December 16, 2013, Plaintiff properly requested and was approved for intermittent FMLA leave.[86] While on that leave, Kellogg reached out to Plaintiff to encourage him to file for continuous FMLA leave and short-term disability to ensure that he was adequately covered.[87] Kellogg's actions undermine Plaintiff's temporal proximity argument that he was terminated for engaging in protected activity.

Plaintiff also contends that he was treated differently from similarly situated employees. Evidence that the employer treated the plaintiff differently from similarly situated employees is relevant to the issue of causation.[88] Such evidence must show that the plaintiff was similarly situated to the non-protected employees in all relevant respects.[89] That is, those other employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[90]

---

[86] (Plaintiff Dep. p. 98, ECF No. 22-3.)

[87] (*Id,*. pp. 98-99.)

[88] *See Rhynes-Hawkins v. Potter*, 2009 WL 5031312 *12 (W.D. Tenn. Dec. 15, 2009).

[89] *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008).

[90] *Mitchell*, 964 F.2d at 583.

As evidence of differential treatment, Plaintiff points to the inadmissible statements of Ms. Williams[91] and to his own deposition testimony. According to Plaintiff, "countless amounts of people" had more points than he did but were not terminated.[92] However, Plaintiff did not review the personnel files of those employees and has no first hand and/or independent knowledge of any of their attendance points.[93] Plaintiff's source for alleging that those employees were similarly situated is conversations he had with co-workers.[94] Plaintiff's testimony concerning statements from an uncorroborated source are insufficient to establish that he was treated any differently from similarly situated employees.[95] Accordingly, Plaintiff has failed to establish a prima facie case of FMLA retaliation.

Even if Plaintiff had established a prima facie case, Kellogg has shown a legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff failed to notify CIGNA of his absences within the requisite forty-eight hours on four occasions, resulting in termination for accumulating 10.5 attendance points, which was more than the 9 points required for termination under Kellogg's attendance policy.

Plaintiff has the burden to prove that Defendant's stated reason for terminating him was

---

[91] Even if Ms. Williams' affidavit was admissible, she failed to name any employee who was similarly situated to Plaintiff or provide any facts to support her conclusory allegation that other employees had more attendance points than Plaintiff but were not terminated.

[92] (Plaintiff Dep. p. 67, ECF No. 22-3.)

[93] (*Id.,* pp. 68-76.)

[94] (*Id.*, p. 76.)

[95] *See Coulter v. Deloitte Consulting LLC*, 79 Fed. App'x 864 (6th Cir. 2003) (rejecting FMLA retaliation claim on the grounds that plaintiff had offered "nothing to rebut [the employer's] factual assertions and articulated reasons for her discharge other than bare denials and her subjective beliefs—both of which are insufficient basis upon which to vacate summary judgment"); *Rhynes-Hawkins*, 2009 WL 5031312 at *12 ("the Court may not consider the alleged statements of Plaintiff's supervisors without some evidentiary support").

pretext for discrimination."[96]  To carry his burden, Plaintiff may show that (1) Kellogg's stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain Kellogg's actions.[97]  Plaintiff has failed to carry his burden.

Plaintiff points to the alleged temporal proximity of his discharge in January 2014 and the days in November and December that he attempted to take as FMLA leave.  "While temporal proximity permits Plaintiff to make out a prima facie case of FMLA retaliation, temporal proximity alone is insufficient to establish pretext…"[98]  "Moreover, the temporal proximity argument is especially unconvincing [when] a plaintiff's prima facie claim of retaliation is otherwise weak," as in the present case.[99]  Accordingly, Kellogg is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

Workers' Compensation Retaliation Claim

Plaintiff alleges that his termination in January 2014 was in retaliation for requesting workers' compensation benefits in June 2012 and receiving treatment for the injury through July 2013.  Tennessee recognizes a cause of action for retaliatory discharge following an employee's claim for workers' compensation[100] and follows the *McDonnell Douglas* burden-shifting framework when deciding such claims.[101]

---

[96]  *Rhynes-Hawkins*, 2009 WL 5031312 at *14.

[97]  *Id.* (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)).

[98]  *Rhynes-Hawkins*, 2009 WL 5031312 at *14; *see also Heady v. U.S. Enrichment Corp.*, 246 Fed. App'x 766, 770-771 (6th Cir. 2005) (temporal proximity is not alone sufficient to establish that an employer's legitimate, non-discriminatory reason for discharge is a pretext).

[99]  *Thompson v. Ameritech Advert. Servs.*, 40 Fed. App'x 90, 93 (6th Cir. 2002).

[100]  *See Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444 (Tenn. 1984).

[101]  *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999).

In order to make out a prima facie case for retaliatory discharge, a plaintiff must prove that (1) he was an employee of the defendant at the time of the injury, (2) he made a claim against the defendant for workers' compensation benefits, (3) the defendant terminated his employment, and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate his employment.[102] The first three elements are not in dispute in this case. Kellogg contends that Plaintiff has not established the "substantial factor" fourth element.

The cause of action for retaliatory discharge is "a narrow exception to the employment at will doctrine," and the evidence must be compelling.[103] In order to meet the substantial factor requirement, a plaintiff must show either direct or "compelling circumstantial evidence" of a causal connection between the workers' compensation claim and the termination, not just the fact that the latter followed the former.[104] A plaintiff can present evidence of the following as circumstantial evidence that may establish causation:

> The employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.[105]

In the present case, Plaintiff points to a purported temporal connection between his June 2012 neck injury and his discharge in January 2014. Plaintiff was released to full duty in March

---

[102] *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993).

[103] *Abraham v. Cumberland-Swan, Inc.*, 1992 WL 207775 (Tenn. Ct. App. Aug. 28, 1992).

[104] *Frizzell v. Mohawk Indus.*, 2006 WL 1328773 (Tenn. Ct. App. May 15, 2006) (citing *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992)).

[105] *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006).

2013 and saw his physician for the last time in July 2013. However, Plaintiff has failed to provide any evidence that anybody involved in the decision to terminate his employment had any knowledge about his injury or the workers' compensation claim he filed eighteen months prior to his discharge. Plaintiff acknowledges that neither Kellogg nor the Union mentioned Plaintiff's workers' compensation leave or claims during Plaintiff's discharge, and it is undisputed that Plaintiff's supervisor at the time of his 2012 workers' compensation claim had no involvement or input into the decision to discharge Plaintiff since the supervisor was no longer with Kellogg in January 2014.[106]

Plaintiff has failed to establish a prima facie claim of workers' compensation retaliation because there is no evidence in the record that his workers' compensation benefits were a substantial factor in the decision to terminate his employment other than his own conclusory and unsupported statements.[107] Furthermore, even if Plaintiff had established a prima facie claim, Kellogg has presented a legitimate non-retaliatory reason for Plaintiff's termination, i.e., non-compliance with its attendance policy, and Plaintiff has not shown that Kellogg's stated reason was a pretext for retaliation. Accordingly, Kellogg is entitled to summary judgment on Plaintiff's workers' compensation retaliatory discharge claim.

The undisputed evidence shows that Kellogg is entitled to judgment as a matter of law on all of Plaintiff's claims. Therefore, Kellogg's motion for summary judgment (ECF No. 21) is **GRANTED**.

      **IT IS SO ORDERED.**

---

[106] (Def's St'ment of Mat. Fcts No. 86; ECF No. 22-1; Pl's Resp. to St'ment of Mat. Fcts, ECF No. 26-2.)

[107] *See Anderson*, 857 S.W.2d at 558-59 ("Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury.")

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  March 14, 2016.